**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PHILLIP MOSCA, M.D., ELAINE MOSCA, AMAL E. MOORAD, M.D., ) ) ) | |
| Plaintiffs, ) ) | |
| -vs- ) ) | Case No. CIV-08-578-F |
| BENJAMIN VALENTY, ERNIE LEWIS, IMAGINART PUBLISHING, a California general partnership, IMAGINART, L.L.C., a Nevada limited liability company, HENRY WOLMORANS, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## ORDER

Before the court is Defendants ImaginArt Publishing and ImaginArt L.L.C.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed August 12, 2008 (doc. no. 7). Plaintiffs, Philip Mosca, M.D., Elaine Mosca and Amal E. Moorad, M.D., have responded to the motion and defendants have thereto replied. Upon due consideration of the parties' submissions, the court makes its determination.

Background

The following facts are taken from plaintiffs' Amended Complaint and from the affidavits submitted in opposition to defendants' motion. The facts from the Amended Complaint are accepted as true for purposes of defendants' motion and factual disputes are resolved in favor of plaintiffs. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008).

Alexandra Nechita is a professional artist whose works include paintings and sculptures. Defendant, Henry Wohlmorans, a Florida citizen and an agent of defendants, ImaginArt Publishing and ImaginArt L.L.C., contacted plaintiffs, all Oklahoma citizens, by telephone in Oklahoma City, Oklahoma, to solicit, on behalf of ImaginArt Publishing, plaintiffs' attendance at an art show in Las Vegas, Nevada, on or about June 3, 2006, featuring the works of Alexandra Nechita. Wohlmorans advised plaintiffs that ImaginArt Publishing would provide airfare and hotel accommodations in Las Vegas, if plaintiffs would attend the art show. Plaintiffs received e-mail communications from ImaginArt Publishing confirming airline transportation and hotel accommodations. Plaintiffs thereafter received the airline tickets.

At the art show, plaintiffs, Philip Mosca, M.D. and Elaine Mosca ("the Mosca plaintiffs"), purchased two sculptures by Alexandra Nechita. The first was a 16" bronze sculpture entitled "Let There Be Peace." The purchase price for the bronze sculpture was $11,000.00. Plaintiffs paid the entire purchase price at the show. The bronze sculpture was represented as being at the Nechita studio and one of only a very few originals. Although defendants represented that the sculpture would be promptly shipped to plaintiffs, the sculpture was never delivered. Plaintiffs later learned from defendants that the sculpture did not exist.

The second sculpture by Alexandra Nechita purchased by plaintiffs was a 16" "Let There Be Peace" sculpture made of murano glass. Plaintiffs paid $10,500.00 for the glass sculpture. Defendants represented that there were only nine originals of the sculpture. Defendants represented to plaintiffs that the glass sculpture was needed for display in Europe and that the glass sculpture would be delivered within two months. The glass sculpture, however, was never delivered to plaintiffs.

At the art show, defendants and the Mosca plaintiffs executed a written agreement regarding the purchases of the bronze and glass sculptures. In the agreement, defendants agreed to sell the sculptures to the Mosca plaintiffs.

Subsequent to the June 2006 art show, Wohlmorans contacted plaintiff, Amal E. Moorad, M.D. ("plaintiff Moorad"), advising that ImaginArt Publishing was in the process of producing a documentary film about the life and art of Nechita. The documentary film was to be entitled: "Art of Peace - The Story of Alexandra Nechita and Her Global Peace Initiative." Wohlmorans solicited plaintiff Moorad's participation as a co-producer of the documentary film. The cost of participation was the payment of $25,000.00. In return, plaintiff was to receive a royalty of $1.00 per DVD sold, numerous trips to major unveilings of Nechita artwork around the world, six signed and numbered serigraphs-on-canvas or lithographs-on-paper by Nechita (or, in lieu thereof, a $25,000.00 credit toward art work of Nechita at ImaginArt Publishing's wholesale price), special acknowledgments in the documentary film, and a 2.5% royalty from all net revenues generated by the documentary film.

During the telephone conversation regarding the documentary film, Wohlmorans asked plaintiff Moorad to contact the Mosca plaintiffs to advise them of the documentary film and to ask if they would participate as co-producers also. Plaintiff Moorad contacted the Mosca plaintiffs and passed on to them the information provided by Wohlmorans.

Subsequently, plaintiff Moorad and the Mosca plaintiffs received e-mail communications from Ben Valenty of ImaginArt Publishing regarding the documentary film. Mr. Valenty sent the "Co-Producer's Agreement" via e-mail for plaintiffs to execute. The co-producer's agreements were signed by plaintiffs in Oklahoma and returned to ImaginArt Publishing in California. The agreements were signed by plaintiffs on or about September 25, 2006. Plaintiff Moorad and the Mosca

plaintiffs paid $25,000.00 in accordance with their agreements. The documentary film was not produced and plaintiffs were never allowed to participate as per their agreements.

Plaintiffs assert that ImaginArt, L.L.C., which came into existence in March, 2007, "effectively took over the entire position of ImaginArt Publishing, a general partnership." Plaintiffs' Response, doc.,no. 14, at 7. As is discussed in more detail in Part III, below, Defendant ImaginArt, L.L.C. is treated, for present purposes, as being identical to defendant, ImaginArt Publishing.

In the Amended Complaint, the Mosca plaintiffs seek damages against defendants based upon fraud (Count I) and breach of contract (Count II) in regard to the purchases of the bronze and glass sculptures. They also seek damages against defendants based upon breach of contract (Count III), fraud (Count V), violation of the federal securities laws (Count VI), violation of the state securities law (Count VII) in regard to the co-producer's agreement and the payment of $25,000.00. Plaintiff Moorad seeks damages against defendants based upon breach of contract (Count IV), fraud (Count V), violation of the federal securities laws (Count VI), violation of the state securities law (Count VII) in regard to the co-producer's agreement and the payment of $25,000.00. Defendants, ImaginArt Publishing and ImaginArt L.L.C., in their motion, contend that dismissal of plaintiffs' action against them is required pursuant to Rule 12(b)(2), Fed. R. Civ. P., because the court may not properly exercise personal jurisdiction over them. In the alternative, defendants request the court to transfer this action to either the United States District Court for the District of Central California or the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a).

Discussion

The plaintiffs bear the burden of establishing personal jurisdiction. Dudnikov, 514 F.3d at 1070. However, where, as in this case, a motion is decided at the preliminary stage based upon the complaint and affidavits, the plaintiffs need only make a prima facie showing of personal jurisdiction. *Id*.; Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004). In determining whether plaintiffs have made a prima facie showing, the court resolves all factual disputes in favor of plaintiffs. *Id*.

In a diversity case, such as this, plaintiffs must satisfy the requirements of the forum's long arm statute as well as the federal Constitution to establish personal jurisdiction. Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1131 (10th Cir. 1991).[1] Oklahoma's long arm statute is coextensive with the constitutional limitations imposed by the Due Process Clause. *Id*. Thus, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long arm statute authorizes jurisdiction over a nonresident defendant. *Id*. The court must therefore inquire as to whether the exercise of personal jurisdiction over defendants, ImaginArt Publishing and ImaginArt L.L.C., comports with due process.

---

[1] In the Amended Complaint, plaintiffs predicate subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and federal question pursuant to 28 U.S.C. § 1331. The federal question jurisdiction is relied upon because plaintiffs have alleged violations of the federal securities law, specifically, the Securities Act of 1933 and the Investment Advisors Act of 1940. The Securities Act of 1933 authorizes nationwide service of process, *see*, 15 U.S.C. § 77v, and permits the exercise of personal jurisdiction, subject to Fifth Amendment fairness and reasonableness analysis. *See*, Peay v. BellSouth Medical Assistance Plan, 205 F.3d 1206, 1212 (10th Cir. 2000) ("[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant.") Plaintiffs have not argued in their brief that personal jurisdiction is proper based upon the Securities Act of 1933 and that supplemental or pendent personal jurisdiction may be exercised over the supplemental jurisdiction claims that arise out of the same nucleus of operative fact as the federal securities claim. *See*, United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002). The court will therefore not undertake that analysis. The court will evaluate this matter in the diversity of jurisdiction framework, as argued by the plaintiffs.

The personal jurisdiction analysis involves a two-step inquiry. AST Sports Science, Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1057 (10th Cir. 2008). First, the court inquires as to whether the nonresident defendant has "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there." *Id.* (quotations omitted). If the defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends the traditional notions of fair play and substantial justice. *Id.*

I.  Minimum Contacts

The "minimum contacts" test may be met in either two ways. Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1066 (10th Cir. 2007). If a nonresident defendant has "continuous and systematic general business contacts" with the forum state, he may be subjected to the general jurisdiction of the forum state's court. *Id.* In the absence of "continuous and systematic" contacts, a forum state court may exercise specific jurisdiction over the nonresident defendant if the defendant "purposefully directed" his activities at the state's resident and the cause of action arises out of those activities. *Id.* In the case at bar, plaintiffs do not argue, and the record does not indicate, that defendants' contacts with Oklahoma are "continuous and systematic" so as to give rise to general jurisdiction over defendants. The court therefore must determine whether it may exercise specific jurisdiction over defendants.

    A.    The Mosca Plaintiffs' Claims Against Defendant ImaginArt Publishing

The Mosca plaintiffs have alleged claims against defendant, ImaginArt Publishing arising from two different transactions, the purchase of sculptures in June 2006, and the payment of $25,000.00 pursuant to the co-producer's agreement in September of 2006. Plaintiffs must establish the court's personal jurisdiction with respect to each of the claims alleged. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17,

24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted.") (emphasis in original); 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.")  The court will first analyze the claims related to the purchase of the sculptures.

The Mosca plaintiffs have alleged a breach of contract claim (Count II) against defendant, ImaginArt Publishing, on the basis that defendant entered into a written agreement to sell the sculptures to plaintiffs and breached the agreement by failing to deliver the sculpture.  It is well-established that a contract between an out-of-state party and a forum state resident cannot, standing alone, establish sufficient minimum contacts with the forum state.  Benton, 375 F.3d at 1077.  "However, with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities."  *Id*. (quotations omitted); TH Agriculture & Nutrition, LLC v. Ace European Group, Ltd., 488 F.3d 1282, 1287-1288 (10th Cir. 2007).  Relevant factors for assessing minimum contacts, in a contract case, include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  Benton, 375 F.3d at 1077.

The court concludes that the Mosca plaintiffs have failed to establish a prima facie case of personal jurisdiction for the contract claim.  The written agreement allegedly breached was negotiated and executed in Nevada.  The partial performance of the written agreement, i.e., the payment by the Mosca plaintiffs for the sculptures, occurred in Nevada.  There are no allegations or evidence that the defendant's performance under the written agreement was to occur in Oklahoma.  The Mosca

plaintiffs allege that defendant represented that the sculptures were to be shipped to Oklahoma but there are no allegations or evidence that this was required under the written agreement. Defendant's only contacts with Oklahoma relating to the contract claim were (i) defendant's agent's solicitation of the Mosca plaintiffs in Oklahoma to come to Nevada to attend the art show and (ii) defendant's confirmation of the travel arrangements and sending the airline tickets to Oklahoma. There are no allegations or evidence presented that defendant's payment of the airline and hotel accommodations in Nevada was a condition precedent to the Mosca plaintiffs purchase of the sculptures. Although defendant's agent solicited plaintiffs to attend the art show and paid for their airline tickets and hotel accommodations, the court concludes that the defendant's contacts with Oklahoma relating to the contract claim are not sufficient to establish the minimum contacts necessary to support the court's exercise of personal jurisdiction over defendant with respect to that claim.[2]

The Mosca plaintiffs also allege a claim of fraud in regard to the purchase of the sculptures. In the context of tort claims, the purposeful direction requirement may be met when a defendant engaged in "(a) an intentional action . . . (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." Dudnikov, 514 F.3d at 1072 (interpreting Calder v. Jones, 465 U.S. 783 (1984)). The Amended Complaint alleges that the bronze sculpture was represented to be in existence and one of only a very few originals. It was also represented that the sculpture would be promptly shipped to plaintiffs. However, according to the Amended Complaint, the sculpture was never shipped and the Mosca

---

[2] The Mosca plaintiffs allege in the Amended Complaint and state in their affidavits that they were solicited to attend another art show featuring the works of Alexandra Nechita in January of 2007. According to plaintiffs, they were again offered airline tickets and hotel accommodations by defendant. The court however finds that these contacts by defendant are not sufficient to establish specific personal jurisdiction for the contract claim as the contacts were not related to the June 2006 art show.

plaintiffs later learned that the bronze sculpture did not exist. In addition, the Amended Complaint alleges that the glass sculpture purchased by the Mosca plaintiffs was represented to be the fifth of nine in the world and would be delivered within two months of purchase. According to the Amended Complaint, however, the glass sculpture was never delivered.

These allegations, accepted as true at this stage of the proceedings, are sufficient to show intentional actions by defendant. The Mosca plaintiffs' allegations, however, fail to show that defendant engaged in intentional actions "expressly aimed" at Oklahoma. The fraud alleged by the Mosca plaintiffs occurred in Nevada. The misrepresentations were made in Nevada. The Mosca plaintiffs relied upon the misrepresentations in Nevada and made payment to defendant, based upon those misrepresentations, in Nevada. The court concludes that plaintiffs have failed to show defendant purposefully directed its activities to the State of Oklahoma. The court concludes that defendant's agent solicitation and defendant's provision of airline tickets and hotel accommodations are not sufficient contacts to warrant the exercise of personal jurisdiction over the fraud claim. The court therefore concludes that the court may not properly exercise personal jurisdiction over the fraud claim arising from the purchases of the sculptures.

The Mosca plaintiffs allege a breach of contract claim (Count IV), a fraud claim (Count V), a federal securities claim (Count VI), a state securities claim (Count VII) in regard to the co-producer's agreement and the payment of $25,000.00. The court concludes that it may exercise specific personal jurisdiction over defendant, ImaginArt Publishing, in regard to all of these claims. The record shows that Wohlmorans, defendant's agent, specifically asked plaintiff Moorad to inquire of the Mosca plaintiffs as to whether they would participate as co-producers in the subject documentary film. As Wohlmorans had requested, Plaintiff Moorad passed on to the

9

Mosca plaintiffs the information Wohlmans had provided. The Mosca plaintiffs received e-mail communications regarding the documentary film from defendant and defendant sent the co-producer's agreement via e-mail communication to plaintiffs. Plaintiffs executed the agreement in Oklahoma and partially performed the agreement in Oklahoma by sending $25,000.00 to defendant. Although a contract with a resident does not by itself establish sufficient minimum contacts with the forum state, prior negotiations and the parties' actual course of dealing must be evaluated in determining whether a nonresident "purposefully established minimum contacts with the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985). The facts presented by the Mosca plaintiffs as to prior negotiations and the parties' actual course of dealing, accepted as true for purposes of defendant's motion, demonstrate that defendant purposefully directed its activities at this state and therefore should have reasonably have anticipated being haled into court in this forum.

   B. <u>Plaintiff Moorad's Claims against Defendant ImaginArt Publishing</u>

Similar to the Mosca plaintiffs, plaintiff Moorad alleges a breach of contract claim (Count IV), a fraud claim (Count V), a federal securities claim (Count VI), a state securities claim (Count VII) in regard to the co-producer's agreement and the payment of $25,000.00. The court additionally concludes that it may exercise specific personal jurisdiction over defendant, ImaginArt Publishing, in regard to plaintiff Moorad's claims. The record shows that Wohlmorans, defendant's agent, specifically asked plaintiff Moorad to participate as a co-producer in the subject documentary film. Plaintiff Moorad received e-mail communications regarding the documentary film from defendant and defendant sent the co-producer's agreement via e-mail communication to plaintiff. Plaintiff Moorad executed the agreement in Oklahoma and partially performed the agreement in Oklahoma by sending $25,000.00 to

defendant. The court concludes that defendant purposefully directed its activities to this state.

      C.    <u>All Claims Against Defendant ImaginArt, L.L.C.</u>

"Each defendant's contacts with the forum State must be assessed individually." <u>Calder v. Jones</u>, 465 U.S. at 790. It appears from the record before the court that defendant ImaginArt L.L.C. did not come into existence until after the events alleged in the Amended Complaint. In the Amended Complaint, however, plaintiffs allege that "Defendant ImaginArt, L.L.C., has heretofore assumed the position of defendant ImaginArt Publishing." *See*, Amended Complaint (doc. no. 5), ¶ 15. In <u>Williams v. Bowman Livestock Equip. Co.</u>, 927 F.2d 1128, 1131 (10th Cir. 1991), the Tenth Circuit recognized that a predecessor corporation's jurisdictional contacts may be imputed to its successor corporation without offending due process, provided that the forum law would hold the successor corporation liable for the predecessor corporation's actions. The Fifth Circuit explained the rationale for such a rule in <u>Patin v. Thoroughbred Power Boats, Inc.</u>, 294 F.3d 640, 654 (5th Cir. 2002), stating that because the two corporations "are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the jurisdictional contacts of the other for the purposes of the [ ] due process analysis." *Id*. at 653. In addition, the Second Circuit has concluded that jurisdictional contacts may be imputed where a defendant is a sole proprietorship and the other defendant is a limited liability company so long as successor liability would apply. <u>LiButti v. U.S.</u>, 178 F.3d 114, 124 (2nd Cir. 1999).

Defendant, ImaginArt L.L.C., has not argued or presented evidence that it is not the successor of defendant, ImaginArt Publishing, and cannot be held liable for that defendant's actions on a theory of successor liability. Plaintiffs have specifically alleged that defendant ImaginArt L.L.C. has assumed the position of defendant

11

ImaginArt Publishing. Accepting the allegation as true for purposes of defendant's motion and mindful that plaintiffs at this stage of the proceedings only need to establish a prima facie case of personal jurisdiction over defendant, the court concludes that the jurisdictional contacts of defendant, ImaginArt Publishing, may be imputed to defendant, ImaginArt L.L.C. The court therefore concludes that defendant, ImaginArt L.L.C., has sufficient minimum contacts with Oklahoma as to the Mosca plaintiffs' claims of breach of contract (Count IV), fraud (Count V), federal securities violations (Count VI), state securities violations (Count VII) and all of plaintiff Moorad's claims. It does not have sufficient minimum contacts as to the Mosca plaintiffs' claims in Count I and Count II.

II.     <u>Traditional Notions of Fair Play and Substantial Justice</u>

Once a plaintiff has established a prima facie showing of sufficient minimum contacts to support jurisdiction, a court must still consider whether the exercise of personal jurisdiction "offends 'traditional notions of fair play and substantial justice.'" <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting <u>Asahi Metal Indus. Co. v. Superior Court of Cal.</u>, 480 U.S. 102, 113 (1987)). The exercise of jurisdiction must be reasonable in light of the circumstances. <u>Benton</u>, 375 F.3d at 1078. Where a defendant has purposefully directed its activities at the forum state's residents, it must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Burger King Corp.</u>, 471 U.S. at 477.

Five factors are relevant to this inquiry: 1) the burden on the out-of-state defendants; 2) the forum state's interest in resolving the dispute; 3) the plaintiffs' interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared

interest of the several states in furthering fundamental social policies. OMI Holdings, 149 F.3d at 1095.

Defendants contend that Oklahoma is in an inconvenient and burdensome forum because they and certain witnesses are located in California. However, it does not appear to the court that the burden on defendants to litigate in Oklahoma is any more significant than would be the burden on plaintiffs of litigating in California. The court concludes that this factor does not favor either party.

The second factor, Oklahoma's interest in adjudicating the suit, weighs in favor of plaintiffs. "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." OMI Holdings, 149 F.3d at 1096. Here, accepting the facts as alleged by plaintiffs, the court concludes that Oklahoma has an interest in redressing plaintiffs' injuries.

The third factor, whether the plaintiff may receive convenient and effective relief in another forum, does not favor either party. While it would be more convenient to pursue plaintiffs' claim in Oklahoma, there is nothing about this suit that would preclude effective relief in California.

The final factor, shared interest of the several states in furthering fundamental social policies, does not appear to be relevant to this case.

Having reviewed the five factors, the court concludes the factors do not weigh in favor of defendants. Defendants have failed to present a compelling case that would render the exercise of personal jurisdiction over them unreasonable as to claims of the Mosca plaintiffs and plaintiff Moorad involving the co-producer's agreements. Defendants have not persuaded the court that the exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice. The court therefore concludes that defendants' motion should be denied as to the Mosca plaintiffs' breach of contract claim (Count IV), the fraud claim (Count V), the federal

securities claim (Count VI), and the state securities claim (Count VII) and all of plaintiff Moorad's claims.

III.   Venue

In the alternative, defendant ImaginArt seeks to transfer this case to the United States District Court for the District of Central California or the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The decision whether to grant a party's motion to transfer under § 1404 is within the discretion of the district court.  Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).[3]  The party seeking the transfer has the burden to demonstrate that the existing forum is inconvenient.  Id.  In the court's view, defendants have not carried that burden.  The court must give greater weight to the plaintiffs' choice of forum.  "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."  Id.  The court concludes that transferring this case to either of the requested district courts would only shift the inconvenience of litigation to plaintiffs.  Without more, the court will not disturb plaintiffs' choice of forum.  Scheidt, 956 F.2d at 966.  ("Merely shifting the inconvenience from one side to the other, [ ] obviously is not a permissible justification for a change of venue.")

Conclusion

Based upon the foregoing, Defendants ImaginArt Publishing and ImaginArt L.L.C.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed August 12, 2008

---

[3] In exercising its discretion, the court may consider the plaintiffs' choice of forum, the convenience of witnesses, their availability via of compulsory process, the cost of making the necessary proof, docket congestion, familiarity with local law and other practical considerations. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).

14

(doc. no. 7) is **GRANTED in part** and **DENIED in part**.  Plaintiffs Philip Mosca and Elaine Mosca's claims alleged in Count I and Count II of the Amended Complaint are **DISMISSED** for lack of personal jurisdiction.  The other claims of Plaintiffs Philip Mosca and Elaine Mosca (Count III, Count V, Count VI, Count VII) and the claims of plaintiff Amal E. Moorad (Count IV, Count VI, Count VII) remain pending.  Defendants ImaginArt Publishing and ImaginArt L.L.C.'s Motion to Transfer, filed August 12, 2008 (doc. no. 7), is **DENIED**.

      DATED October  23, 2008.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

08-0578p003(pub).wpd